**Wayne N. MARBURY, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 84–82.

District of Columbia Court of Appeals.

Argued March 21, 1985.

Decided March 27, 1985.[1]

Allie Sheffield, Public Defender Service, with whom James Klein, Public Defender Service, Washington, D.C., was on the brief, for appellant.

John M. Facciola, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Judith Hetherton, and Charles W. Cobb, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEBEKER, MACK, and BELSON, Associate Judges.

PER CURIAM:

The sole issue on this appeal is whether the trial court erred in denying appellant's motion to suppress evidence as the fruit of an unlawful seizure. We find no error, and therefore affirm.

I.

Appellant, Wayne N. Marbury, was found guilty by the trial court, sitting without a jury, of carrying a pistol without a license, D.C. Code § 22–3204 (1981), possession of an unregistered firearm, *id.* § 6–2311, and possession of ammunition, *id.* § 6–2361. Prior to trial, Marbury moved to suppress the gun and ammunition. The trial court held a hearing at which both the arresting officer, William Cunningham, and appellant testified; the court credited the officer's testimony and denied the motion to suppress.

Cunningham stated that on September 15, 1983, at 9:30 in the evening, he was patrolling the 3200 block of 15th Place, S.E., between Alabama and Congress Avenues, in a marked squad car. According to Cunningham, this area is known for a high volume of narcotics transactions. Cunningham noticed a parked car in front of him on the block, occupied by two people: appellant, in the driver's seat, and a passenger. A third person, standing outside, was leaning into the car through a window on the passenger side and conversing with the occupants. As Cunningham approached in his squad car, the third person entered the car, and appellant started the ignition and pulled away from the curb.

1. This appeal was originally decided by our memorandum opinion and judgment dated March 27, 1985. The request for publication has been granted.

Appellant did not turn on his lights.[2] Cunningham then turned on his flashers, signalling the driver to stop. Appellant stopped the car within one-half to three-quarters of a block, at the corner of 15th Street and Alabama Avenue. Cunningham testified that no chase was involved. Cunningham ran the tags on appellant's car through the police department's computer system, but found no irregularity. He then got out of his squad car and approached on foot; as he did so, he noticed what appeared to be a bullet hole in the trunk of appellant's car. Cunningham asked appellant to turn on the interior light in the car; appellant replied that the light was broken. Noticing appellant doing something with his hands, Cunningham ordered him out of the car, and thereupon observed a bulge in his waistband. Following a pat-down search, Cunningham recovered a gun and ammunition.

Appellant stated that he had stopped his car to pick up an acquaintance; that the car's ignition was never turned off, and the car was stopped for only about fifteen seconds; and that the pistol was recovered from under the front seat, not from his person.

Cunningham stated that several factors led him to stop appellant: first, that although he did not see anything exchanged, he suspected that he had interrupted a drug transaction when he pulled up to appellant's car; second, that his suspicion was further aroused when appellant drove off at his approach; and third, that the bullet hole in the trunk of the car looked suspicious. He also specifically stated that

he had *not* pulled appellant's car over because of a traffic violation (driving without lights); and he made no mention of the traffic violation in any police department form.

The trial court found Cunningham's testimony credible, and ruled that he had an articulable suspicion of criminal activity when appellant drove off at his approach. The court therefore denied the motion to suppress the gun and ammunition, and then found appellant guilty of all three charges in the information. This appeal followed.

## II.

■ We need not rule on the issue of whether the factors identified by Cunningham (the conversation at night in a high-crime area, the bullet hole, the appellant's reaction to the arrival of the police) are sufficient to constitute an "articulable suspicion" of criminal activity justifying Cunningham's seizure of appellant. Cunningham stated, and the trial court found (*see* App.R. at 49), that appellant drove off without turning on his lights, a traffic violation. As the government points out, even though Cunningham did not rely upon this violation in stopping appellant, he was entitled to do so. Our review of the record reveals that "the circumstances, viewed objectively" known to the officer at the time of the stop, warranted his actions, *see Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723–24, 56 L.Ed.2d 168 (1978). Objective reasonableness is all that is re-

2. Appellant contends that Cunningham testified that appellant did not put on his *headlights;* that since Cunningham was at all times located behind appellant's car it is not completely clear how he was able to observe that the headlights were not on; and that since the defense did not have an opportunity to cross-examine Cunningham on this point, the case should be remanded for a hearing on this issue should our decision in this case rest on the traffic infraction, *see infra.* Cunningham, however, never used the word "headlights"; on direct examination he stated, "the driver failed to put on his lights" (App.R. 5). There is no question that from his position, Cunningham could observe the tail lights of appellant's car. It was only defense counsel who used the word "headlights," *see* R.

at 14 ("[Defense Counsel]: Did you notice at that time, do you recall whether or not the lights were on; the headlights that is? [Cunningham]: No, they weren't on." Even assuming that Cunningham's testimony should be read to refer to "headlights," defense counsel did have an opportunity to cross-examine Cunningham on this issue, *see, e.g.,* App.R. at 8, 11, 14, 21. Appellant contradicted Cunningham's statement, *see* App.R. 24 ("my lights were on"). The court resolved this factual dispute in favor of the government, *see* App.R. at 49 ("the car took off without its lights"). Since this issue was joined at the suppression hearing, and squarely resolved against appellant, no purpose would be served by a remand here.

quired by the Fourth Amendment's prohibition upon "unreasonable" seizures, *see id.* at 137, 98 S.Ct. at 1723; the officer's asserted reason for his action is not controlling, *see Dunham v. District of Columbia,* 442 A.2d 121, 127 & n. 8 (D.C.1982) (citing *Scott, supra* ).

■ Once the car was legally stopped, even if only for a traffic violation, the officer's action in ordering appellant out of the car was reasonable, *Pennsylvania v. Mimms,* 434 U.S. 106, 111, 98 S.Ct. 330, 333–34, 54 L.Ed.2d 331 (1977) (per curiam); *see Little v. United States,* 393 A.2d 94, 97 (D.C.1978). "[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Mimms, supra,* 434 U.S. at 111 n. 6, 98 S.Ct. at 333 n. 6. A limited search of appellant's person for weapons, even under these circumstances, was reasonable under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *see Mimms, supra,* 434 U.S. at 112, 98 S.Ct. at 334; "[t]he bulge in the jacket permitted the officer to conclude that [appellant] was armed and thus posed a serious and present danger to the safety of the officer. In these circumstances, any man of 'reasonable caution' would likely have conducted the 'pat down.' " *Id.*

We therefore affirm the denial of appellant's motion to suppress, although we rest our decision upon a different ground than that relied upon by the trial court, *see Purce v. United States,* 482 A.2d 772, 778–79 (D.C.1984).

*Affirmed.*