COURT OF APPEALS OF VIRGINIA

Present: Judges Felton, Kelsey and Senior Judge Willis
Argued at Richmond, Virginia


ADRIAN EDWARDO SLAYTON
                                             OPINION BY
v.    Record No. 1913-02-2         JUDGE D. ARTHUR KELSEY
                                            JUNE 24, 2003
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF HALIFAX COUNTY
                William L. Wellons, Judge

        Bryan K. Selz (Overbey, Hawkins, Selz &
        Wright, on brief), for appellant.

        Kathleen B. Martin, Assistant Attorney
        General (Jerry W. Kilgore, Attorney General,
        on brief), for appellee.


    The trial court found the appellant, Adrian Edwardo

Slayton, guilty of possession of cocaine with intent to

distribute (Code § 18.2-248) and possession of a firearm while

simultaneously possessing illegal drugs (Code § 18.2-308.4(A)).

On appeal, Slayton challenges only the trial court's denial of

his pretrial suppression motion.  Finding no error, we affirm

the trial court.

                             I.

    "On appeal from a denial of a suppression motion, we must

review the evidence in the light most favorable to the

Commonwealth, giving it the benefit of any reasonable

inferences."  Barkley v. Commonwealth, 39 Va. App. 682, 687, 576

S.E.2d 234, 236 (2003); see also Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 924 (2000).

On November 30, 2001, Slayton was a passenger in a vehicle traveling in a high crime area in Halifax County. Deputies Jimmy Clay and Craig Spencer stopped the vehicle for failure to display a county decal. Spencer approached the vehicle's passenger side while Clay issued a summons to the driver. From his vantage point, Spencer was able to see several bullets in the vehicle's open glove box. The sheriff's department had been investigating a number of shootings in the area involving rifles and the bullets in the glove box appeared to Spencer "to be rifle bullets."

After issuing the summons for the decal, Deputy Clay asked the driver for consent to search the vehicle. The driver consented and Slayton exited the passenger seat of the vehicle. At that point, Deputy Spencer noticed that "Slayton's 'long mid-thigh' winter coat was 'cockeyed' and that there was 'something' in the right pocket." Spencer asked Slayton if he was carrying a weapon. Slayton "shook his head, no." Nonetheless fearing for his safety, Spencer initiated a limited weapons pat-down, beginning with Slayton's left side and then working over to his right side. As Spencer inspected Slayton's right side, he saw what appeared to be the butt of a handgun with a shell clip in it protruding from the pocket "a couple of

-

inches."  Except for the portion of the butt sticking out of Slayton's pocket, the remainder of the weapon could not be seen.

While removing the handgun, Spencer "could hear it hit something else in the pocket."  Spencer retrieved the other object from Slayton's pocket, which turned out to be a pill bottle containing nine rocks of crack cocaine.  Immediately thereafter, Spencer placed Slayton under arrest for possession of crack cocaine and the simultaneous possession of a firearm.

At trial, Slayton moved to suppress the crack cocaine claiming that (i) Deputy Spencer did not have a reasonable, articulable suspicion warranting the initial pat-down, and, in any event, (ii) the search exceeded the permissible scope of a weapons frisk when Deputy Spencer removed the canister from Slayton's pocket.

The trial court denied the suppression motion, finding that the totality of the circumstances (the presence of bullets in open view, the recent history of violence, the reputation of the location as a "high crime area" notorious for drug transactions, the possibility of a weapon causing Slayton's coat pocket to droop down, and the presence of an unknown object in the same pocket as the firearm) provided sufficient justification for Deputy Spencer's removal of both the firearm and the pill bottle from Slayton's pocket.

"Though the ultimate question whether the officers violated the Fourth Amendment triggers de novo scrutiny, we defer to the trial court's findings of 'historical fact' and give 'due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.'" Barkley, 39 Va. App. at 689-90, 576 S.E.2d at 237-38 (citations omitted). Thus, we must give "deference to the factual findings of the trial court" and "independently determine" whether those findings satisfy the requirements of the Fourth Amendment. Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 464 (2003). To prevail on appeal, "the defendant must show that the trial court's denial of his suppression motion, when the evidence is considered in the light most favorable to the prosecution, was reversible error." Id.

On appeal, Slayton concedes that "Deputy Spencer was entitled to conduct a limited pat-down search of the defendant for weapons." Slayton argues, however, that the subsequent removal of the pill bottle containing crack cocaine violated the Fourth Amendment. Slayton acknowledges the search-incident-to-arrest exception to the warrant requirement, but contends it does not apply here because (i) Deputy Spencer had no probable cause to arrest Slayton for carrying a concealed weapon, and (ii) even if probable cause existed, Spencer's

-

failure to arrest Slayton on that particular charge precludes it from being a basis for the incidental search.  For the following reasons, we disagree with both assertions.

A.

We begin with probable cause, which "as the very name implies, deals with probabilities.  These are not technical; they are the factual and practical considerations in every day life on which reasonable and prudent men, not legal technicians, act."  Derr v. Commonwealth, 242 Va. 413, 421, 410 S.E.2d 662, 666 (1991) (citation omitted).  "Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonable trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense had been or is being committed."  Purdie v. Commonwealth, 36 Va. App. 178, 185, 549 S.E.2d 33, 37 (2001) (quoting Jones v. Commonwealth, 18 Va. App. 229, 231, 443 S.E.2d 189, 190 (1994)) (internal quotation marks omitted); see also Al-Karrien v. Commonwealth, 38 Va. App. 35, 47, 561 S.E.2d 747, 753 (2002).

Probable cause relies on a "flexible, common-sense standard" —— one that does not "demand any showing that such a belief be correct or more likely true than false."  Texas v. Brown, 460 U.S. 730, 742 (1983) (citations and internal quotation marks omitted).  In other words, the standard "does

-

not deal with hard certainties, but with probabilities."  Id.
"Long before the law of probabilities was articulated as such,
practical people formulated certain common-sense conclusions
about human behavior; jurors as factfinders are permitted to do
the same —— and so are law enforcement officers."  Id.  As a
result, "in determining whether probable cause exists, the
evidence 'must be seen and weighed not in terms of library
analysis by scholars, but as understood by those versed in the
field of law enforcement.'"  Gomez v. Atkins, 296 F.3d 253, 262
(4th Cir. 2002) (quoting Illinois v. Gates, 462 U.S. 213, 232
(1983)).

Under this standard, Deputy Spencer had probable cause to
believe Slayton was carrying a concealed weapon in violation of
Code § 18.2-308.  Except for a "couple of inches" of the butt of
the handgun protruding from Slayton's pocket, the rest of the
weapon was completely hidden.  And even those "couple of inches"
were observed by Deputy Spencer only during the close-quarters
encounter of a weapons frisk, not beforehand.  A reasonable
probability exists, therefore, that Slayton's firearm —— both at
the time of the pat-down and during the few moments immediately
preceding it —— was "hidden from all except those with an
unusual or exceptional opportunity" to observe it.  Winston v.
Commonwealth, 26 Va. App. 746, 756, 497 S.E.2d 141, 146 (1998)
(quoting Main v. Commonwealth, 20 Va. App. 370, 372-73, 457
S.E.2d 400, 402 (1995) (en banc)).  An equally reasonable

-

probability supports the inference that Slayton, having lied about having a firearm on him when directly questioned by Deputy Spencer, did not possess a permit issued under Code § 18.2-308(D) authorizing him to carry a concealed weapon.

Slayton disagrees, arguing that the firearm was not hidden from common observation because Deputy Spencer observed a portion of the butt protruding from Slayton's pocket and immediately knew it to be a handgun. Anyone else observing Slayton from that vantage point, he contends, might likewise have seen it. As a result, Slayton reasons, the evidence would not have been sufficient to support a conviction under § 18.2-308. Perhaps so — but that misses the point. "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt. And this means less than evidence which would justify condemnation or conviction." Brinegar v. United States, 338 U.S. 160, 175 (1949) (citations and internal quotation marks omitted).

In other words, even though probable cause means more than a "mere suspicion," it is not necessary for the facts to be "sufficient to convict" the accused of the offense. Gomez, 296 F.3d at 262 (quoting Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996)). Unlike a factfinder at trial, "reasonable law officers need not 'resolve every doubt about a suspect's guilt before probable cause is established.'" Id. (quoting Torchinsky v. Siwinski, 942 F.2d 257, 260 (4th Cir. 1991)). We reject,

therefore, Slayton's assertion that the alleged insufficiency of the evidence for a conviction necessarily precludes a finding of probable cause.

Because Deputy Spencer had probable cause to believe Slayton illegally possessed a concealed weapon, Spencer had authority both to arrest Slayton and to search him incident to that arrest. See United States v. Robinson, 414 U.S. 218, 224 (1973) ("It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment."); McCain v. Commonwealth, 261 Va. 483, 492, 545 S.E.2d 541, 546 (2001); Ross v. Commonwealth, 35 Va. App. 103, 105, 542 S.E.2d 819, 820 (2001).

It matters not that the search preceded the actual arrest so long as probable cause existed at the time of the search. McCracken v. Commonwealth, 39 Va. App. 254, 261, 572 S.E.2d 493, 496 (2002) (en banc). Once "probable cause exists to arrest a person, a constitutionally permissible search of the person incident to arrest may be conducted by an officer either before or after the arrest if the search is contemporaneous with the arrest." Italiano v. Commonwealth, 214 Va. 334, 336, 200 S.E.2d 526, 528 (1973) (emphasis in original).[1]

---

[1] "It is axiomatic," however, "that an incident search may not precede an arrest and serve as part of its justification." Smith v. Ohio, 494 U.S. 541, 543 (1990) (quoting Sibron v. New York, 392 U.S. 40, 63 (1968)); see also Henry v. United States, 361 U.S. 98, 103 (1959) ("An arrest is not justified by what the subsequent search discloses"). In other words, "the legality of

-

Slayton also argues that even if probable cause existed for a concealed weapons violation, that was not the ground on which he was arrested. The search-incident-to-arrest doctrine, he reasons, simply does not apply. The argument has some intuitive appeal, but only if one assumes a subjective standard governs the probable cause test. Probable cause, however, turns only on "'objective facts,' not the 'subjective opinion' of a police officer." Golden v. Commonwealth, 30 Va. App. 618, 625, 519 S.E.2d 378, 381 (1999) (citations omitted). As a result, "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." Whren v. United States, 517 U.S. 806, 813 (1996) (quoting Scott v. United States, 436 U.S. 128, 138 (1978)).

The absence of probable cause to believe a suspect committed the particular crime for which he was arrested does not necessarily invalidate the arrest if the officer possessed

_____

the arrest cannot depend on the search." United States v. Han, 74 F.3d 537, 541 (4th Cir. 1996). But, when probable cause for an arrest "exists independently of what the search produces, the fact that the search precedes the formal arrest is immaterial . . . ." Italiano, 124 Va. at 337, 200 S.E.2d at 528 (quoting Holt v. Simpson, 340 F.2d 853, 856 (7th Cir. 1965)).

-

sufficient objective information to support an arrest on a different charge. See Golden, 30 Va. App. at 625, 519 S.E.2d at 381; McGuire v. Commonwealth, 31 Va. App. 584, 596-97, 525 S.E.2d 43, 49 (2000). This principle merely recognizes the settled rule that the "validity of an arrest is normally gauged by an objective standard rather than by inquiry into the officer's presumed motives." Limonja v. Commonwealth, 8 Va. App. 532, 538, 383 S.E.2d 476, 480 (1989) (en banc) (citation omitted). For this reason, the fact that Slayton was arrested under Code §§ 18.2-248 (cocaine possession) and 18.2-308.4(A) (possession of firearm and cocaine simultaneously), rather than under Code § 18.2-308 (possession of a concealed weapon), does not preclude the concealed weapon basis for Slayton's search incident to his arrest.

## III.

In sum, the trial court did not err by denying Slayton's motion to suppress.[2] Deputy Spencer had probable cause to arrest

---

[2] In his suppression motion, Slayton argued that his warrantless search also violated the Virginia Constitution. Our Fourth Amendment analysis, however, governs this issue as well. "Our courts have consistently held that the protections afforded under the Virginia Constitution are co-extensive with those in the United States Constitution." Sabo v. Commonwealth, 38 Va. App. 63, 77, 561 S.E.2d 761, 768 (2002)(quoting Henry v. Commonwealth, 32 Va. App. 547, 551, 529 S.E.2d 796, 798 (2000), and Bennefield v. Commonwealth, 21 Va. App. 729, 739-40, 467 S.E.2d 306, 311 (1996)).

Slayton for a concealed weapon offense as well as the concomitant right to conduct a search incident to that arrest. It is legally irrelevant that, upon the discovery of the pill bottle containing suspected cocaine, Spencer chose not to charge Slayton with the lesser concealed-weapon violation.

<u>Affirmed.</u>