COURT OF APPEALS OF VIRGINIA


Present:    Judges Frank, Haley and Powell
Argued by teleconference

COMMONWEALTH OF VIRGINIA
                                                    MEMORANDUM OPINION* BY
v.            Record No. 2193-10-1                   JUDGE JAMES W. HALEY, JR.
                                                           MARCH 28, 2011
TYLER CANNON SPAIN


             FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                              Leslie L. Lilley, Judge

             Susan M. Harris, Assistant Attorney General (Kenneth T. Cuccinelli,
             II, Attorney General, on brief), for appellant.

             Annette Miller, Senior Assistant Public Defender, for appellee.


                                I.  Introduction

        Tyler Cannon Spain was indicted on one count of felony possession with intent to

distribute more than one-half ounce, but less than five pounds, of marijuana in violation of Code

§ 18.2-248.1(a)(2).  Spain filed a motion to suppress claiming the marijuana obtained from his

backpack was the product of an illegal seizure.  The trial court found the officer made a valid

Terry stop but nonetheless suppressed the evidence.  The Commonwealth appeals.  Finding the

trial court erred as a matter of law, we reverse the suppression order and remand the case for

trial.

                                   II.  Facts

        On October 16, 2010, Detective Marafka, a Virginia Beach police officer hired as private

security, was patrolling the Virginia Arts Center on a bicycle monitoring vendor tents that had

been set up for a boardwalk art show scheduled to open the following day.  He had been hired

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

because in previous years, "numerous reports of theft and vandalism" to the art exhibits had been reported. On October 16, there was "very minimal traffic on the boardwalk . . . because a severe thunderstorm had just ended." Nonetheless, at approximately 9:30 p.m., he saw Spain move quickly between two vendor tents. Spain had a large bulge on his back, underneath his t-shirt, which appeared to be a book bag. Spain continued into the parking garage of an adjacent hotel and then exited the garage using a different entry. Marafka watched Spain briskly cross the street while looking over his shoulder in the direction of the detective and holding his cell phone. Marafka dismounted from his bicycle, illuminated himself with a flashlight, identified himself as a police officer, and asked Spain "if he was willing to come back and speak to me." Spain, about thirty feet ahead, immediately started walking back toward the detective and asked what the detective wanted from him.

Detective Marafka explained to Spain what he had observed and shared his concern that Spain may have taken something from the boardwalk. He then asked Spain why he was wearing a backpack underneath his shirt. Spain, who was still walking toward the officer, promptly took off his shirt and backpack and retained possession of them. Marafka reiterated to Spain that he saw him travel between the two tents and was concerned he may have taken something and stashed it in his backpack. Spain told Marafka he was out on a fifty-thousand-dollar bond and could not afford to get into any trouble. Marafka replied, "Well, look, if you haven't stolen anything you're going to be on your way. I will thank you for your time and you will be on your way." Spain began to open his backpack as he told the officer, "I have a little bit of weed in the bag." Spain reached into the bag, and Marafka, worried Spain was reaching for a weapon, illuminated the bag with his flashlight and grabbed for the bag at the same time as Spain. Together, they pulled out a plastic container containing small baggies of marijuana.

Prior to trial, Spain filed a motion to suppress the marijuana obtained from his backpack. The trial court held a suppression hearing on October 12, 2010. Detective Marafka was the sole witness. Near the conclusion of the hearing, the trial court found "the officer had a reasonable belief that maybe something was afoot" when he stopped Spain. The court concluded,

> I find no problem with the stop. I think it was appropriate for the officer to make that stop. I think all of the criteria there was followed. The defendant's actions, his clothes, his movements, all attracted the officer's attention. We came [sic] back to did a seizure occur because that's what kicks in the Fourth Amendment.

The court explained:

> If you haven't stolen anything you can be on your way. Well, that's - - that's a key sentence. If you haven't stolen anything you can be on your way. Now, the reverse of that is you're not going to be on your way if you've stolen something. So the real test of this under the circumstances of the encounter did the police officer's conduct communicate to a rea - - reasonable person that the person was not free to decline the officer's request. And when the officer made that statement if you haven't stolen anything you can be on your way, the inference is he couldn't be on his way unless he showed him the backpack. I can't get there any other way. I'm going to suppress the evidence.

The Commonwealth appeals this interlocutory ruling pursuant to Code § 19.2-398.

### III. Analysis

In reviewing a trial court's ruling on a motion to suppress, we defer to the trial court's findings of fact, but "decide *de novo* the 'ultimate question' of whether or not the officers violated the Fourth Amendment." Williams v. Commonwealth, 49 Va. App. 439, 454, 642 S.E.2d 295, 302 (2007) (*en banc*) (quoting Slayton v. Commonwealth, 41 Va. App. 101, 105, 582 S.E.2d 448, 449-50 (2003)). An officer's "action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.'" Brigham City v. Stuart, 547 U.S. 398, 404 (2006) (quoting Scott v. United States, 436 U.S. 128, 138 (1978)).

- 3 -

Fourth Amendment "jurisprudence recognizes three categories of police-citizen confrontations: (1) consensual encounters . . . (2) Terry [v. Ohio, 392 U.S. 1 (1968),] stops, and (3) highly intrusive arrests and searches founded on probable cause." Sykes v. Commonwealth, 37 Va. App. 262, 267-68, 556 S.E.2d 794, 796 (2001) (internal citations omitted); see also Wechsler v. Commonwealth, 20 Va. App. 162, 169, 455 S.E.2d 744, 747 (1995). "As long as the person to whom questions are put remains free to disregard the questions and walk away," there has been no seizure that would require any particularized and objective justification. United States v. Mendenhall, 446 U.S. 544, 554 (1980). A seizure occurs only when an innocent person would reasonably conclude that an officer's "'physical force or show of authority'" has taken away their freedom to terminate the encounter. Id. at 552 (quoting Terry, 392 U.S. at 19 n.16).

The Fourth Amendment "does not proscribe all seizures, only those that are 'unreasonable.'" Hodnett v. Commonwealth, 32 Va. App. 684, 690, 530 S.E.2d 433, 436 (2000) (citations omitted). A seizure based on probable cause or reasonable articulable suspicion does not result in any constitutional violation warranting suppression. Mendenhall, 446 U.S. at 553-54. Searches or seizures conducted in violation of the Fourth Amendment, however, require suppression of both unlawfully-seized evidence and all incriminating evidence derived from that evidence. Harris v. Commonwealth, 266 Va. 28, 34, 581 S.E.2d 206, 210 (2003).

"Under well-settled principles of law, police officers may stop a person for the purpose of investigating possible criminal behavior even though no probable cause exists for an arrest. A stop is permissible as long as the officer has reasonable, articulable suspicion that criminal activity *may* be afoot." McCain v. Commonwealth, 275 Va. 546, 552, 659 S.E.2d 512, 515-16 (2008) (citations omitted). Reasonable, articulable suspicion is "'a particularized and objective

- 4 -

basis' for suspecting the person stopped of criminal activity." <u>Ornelas v. United States</u>, 517 U.S. 690, 696 (1996) (quoting <u>United States v. Cortez</u>, 449 U.S. 411, 417-18 (1981)).

The trial court here, applying the standard set forth in <u>Terry</u>, found "no problem with the stop," because "the officer had a reasonable belief that maybe something was afoot." The court subsequently determined Spain was not free to leave, and thus the <u>Terry</u> stop continued, when Detective Marafka advised, "if you haven't stolen anything you're going to be on your way." Without further explanation, the trial court suppressed the evidence. This suppression conflicts with the court's earlier finding that the officer had reasonable, articulable suspicion to seize Spain. Spain did not contend at trial, nor does he on appeal, that there was an unlawful search of his person or his bag. Thus we will not consider it as a basis for reversal. <u>See</u> Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ."). Applying correct Fourth Amendment principles, we find the trial court erred as a matter of law by suppressing the evidence.

Spain contends he was unlawfully seized only after Marafka advised him, "if you haven't stolen anything you're going to be on your way." <u>See</u> Oral Argument Audio at 14:59 (Mar. 8, 2011). Assuming without deciding Spain was seized at that point, and thus the encounter was no longer consensual, <u>see</u> <u>Luginbyhl v. Commonwealth</u>, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) ("an appellate court decides cases 'on the best and narrowest ground available'" (quoting <u>Air Courier Conference v. Am. Postal Workers Union</u>, 498 U.S. 517, 531 (1991) (Stevens, J. concurring))), the totality of the circumstances demonstrates Detective Marafka had reasonable, articulable suspicion to seize him. Spain was one of very few people on the Virgina Beach boardwalk on the evening in question. Marafka spotted Spain moving quickly between two vendor tents with a large bulge protruding from his back. Spain continued briskly through a

parking garage and across the street while looking behind him in the direction of Detective Marafka. After Spain responded to Marafka's request to return and talk to him, Spain told the detective he was out on a fifty-thousand-dollar bond and could not afford to get into any trouble. We agree with the trial court that Spain's words, "actions, his clothes, his movements," gave Marafka reasonable, articulable suspicion to detain him. A seizure based on reasonable, articulable suspicion does not result in any constitutional violation warranting suppression. Mendenhall, 446 U.S. at 553-54.

IV. Conclusion

In sum, the trial court erred in finding Spain was unlawfully seized and granting his motion to suppress. We thus reverse the suppression order and remand for trial.

Reversed and remanded.